**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |
|---|---|
| **DANIEL GIBSON,** | ) |
| Plaintiff, | ) |
| v. | ) CIVIL NO. 3:10CV226 |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Daniel Gibson, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for Social Security Disability ("DIB") payments. The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 7) be DENIED; that Defendant's motion for summary judgment (docket no. 11) be GRANTED; and that the final decision of the Commissioner be

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

AFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on December 31, 2007, claiming disability due to spine surgery and back problems, with an alleged onset date of November 15, 2005. (R. at 115-16, 346.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 67-69; 78-83.) On November 25, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 20-63.) On July 2, 2009, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act where, based on his age, education, work experience and residual functional capacity, there are jobs he could perform which exist in significant numbers in the national economy. (R. at 10-19.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial

3

evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability. (R. at 12.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, fibromyalgia, osteoarthritis, and carpal tunnel syndrome, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 12-13.) The ALJ next determined that Plaintiff had the RFC to perform light work, except that he could never use ladders, ropes, or scaffolding; could occasionally use ramps and stairs; could occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold or heat, humidity, vibrations, and hazards; and must have an opportunity to alternate sitting and standing. (R. at 13-17.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform his past relevant work as an electrician because of the level of exertion required in the position. (R. at 17.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 18-19.) Specifically, the ALJ found that Plaintiff could work as cashier, assembly worker, or router. (R. at 18-19.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 19.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the

6

alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of his position, Plaintiff argues that the ALJ improperly relied on Grid Rule 202.14 to support his conclusion that Plaintiff was not disabled. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 8-13.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 10-14.)

> **A.** **The ALJ's conclusion that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform is supported by substantial evidence and application of the correct legal standard.**

Plaintiff's only argument is that the ALJ improperly relied on Grid Rule 202.14 (which considers work in the "light" RFC range) to determine that Plaintiff was not disabled. (Pl.'s Mem. at 8-13.) Plaintiff contends that because the ALJ required in his RFC determination an opportunity for Plaintiff to alternate sitting and standing, such a condition limits him to only "sedentary" work, and therefore he is disabled under Grid Rule 201.14. (Pl.'s Mem. at 8-13.)

Once an ALJ determines a claimant's RFC, he may use the Medical Vocational Guidelines ("Grids") to determine the claimant's level of disability and potential for employment. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The Grids catagorize jobs by their physical-exertion requirements,[6] namely, sedentary,[7] light,[8] medium, heavy, and very heavy.

---

[6] A claimant's exertional limitations determines the proper exertional level for the claimant's situation. See SSR 83-10. An exertional limitation is an impairment-caused limitation which affects one's capability to perform an exertional activity (strength activity) such as sitting, standing, walking, lifting, carrying pushing, and pulling. SSR 83-10.

[7] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and

7

See SSR 83-10. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels (Rule 204.00). SSR 83-10; 20 C.F.R. Pt. 404, Subpt. P, App. 2. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the rule directs a finding of "disabled" or "not disabled."

Utilization of the Grids is predicated on the claimant suffering from exertional limitations, and the Grids are not applicable if the claimant suffers solely from nonexertional impairments. 20 C.F.R. § 404.1569a; see 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(1) ("The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments."). Thus, where a claimant suffers only exertional limitations, the ALJ must consult the Grids to determine eligibility for benefits. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). If the claimant is found to be disabled on the strength requirement alone (i.e., a claimant is limited to light work and meets the other categories in rule 202.01), then there is no need to examine the effects of the nonexertional limitations.

However, some limitations, such as the option to sit or stand, are not addressed in the

---

standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[8] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. . . . A job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

8

Grids. In such a case, the ALJ should consult a VE to determine what implications the additional limitation will have on the occupational base.[9] Such a limitation was considered in Walls v. Barnhart, in which the Fourth Circuit ultimately determined that the ALJ was permitted to rely on the VE's testimony regarding the implications of the sit/stand option on the occupational base. 296 F.3d 287, 292 (4th Cir. 2002). In Walls, the ALJ posed several hypotheticals to the VE, including one that allowed for a sit/stand option. Id. at 290. The VE testified that he would eliminate from the potential occupational base all medium jobs, reduce the light jobs by fifty percent, and include all sedentary jobs. Id. The ALJ thereafter made no specific findings regarding the sit/stand provision, but adopted the VE's opinion regarding the jobs available in the national and local economies. Id. The Fourth Circuit concluded that there was no contradiction between SSR 83-12 and the ALJ's findings regarding the plaintiff's ability to perform a significant number of jobs in the national economy. Id. at 291. The court went on

---

[9] SSR 83-12 states:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work.
>
> . . . . However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. <u>In cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base.</u>

(emphasis added).

to find that there was no "special clarity"[10] rule required when a VE testifies regarding a sit/stand option, and even if there was, it would have been satisfied, as "it [was] clear that the VE knew he was responding to the ALJ's instruction to provide for no prolonged walking and standing and allow for a sit/stand option at the claimant's discretion." Id.

Here, contrary to Plaintiff's assertions, the ALJ did not simply rely on the Grids to determine that Plaintiff was not disabled. The ALJ noted that if Plaintiff had the RFC to perform the full range of light work, a finding of "not disabled" would be directed by the Grids. (R. at 18.) However, the ALJ went on to note that Plaintiff's ability to perform all, or substantially all, of the requirements of light work had been impeded by additional limitations.[11] (R. at 18.) Consequently, the ALJ consulted a VE to determine whether there were occupations that existed in significant numbers that Plaintiff could perform. (R. at 49-62.) The VE testified that Plaintiff would be able to perform the light duty positions of cashier, assembly worker, and router, though he reduced the number of positions available in the local and national economies by fifty percent to account for a sit/stand option. (R. at 49-62.)

Specifically, the VE was asked to consider a sit/stand option in the following query by the ALJ:

---

[10] The Fourth Circuit noted that the district court in Walls stated that there was "'good reason to require special clarity when a VE testifies that a person who needs a sit/stand option can perform unskilled light or sedentary jobs.'" 296 F.3d at 291. However, the Fourth Circuit declined to adopt such a "special clarity" criterion, finding that it would require the agency to support its decisions by more than the statutorily designated substantial evidence burden. Id. Accordingly, the district court applied an improper standard. Id.

[11] While there were several additional limitations, the sole limitation at issue on appeal is the ALJ's finding that Plaintiff must have an opportunity to alternate sitting and standing, or the "sit/stand" option. (R. at 13.)

10

>[ALJ]: . . . What about - - would there be any sit-stand options available? Let's assume that an individual - - this hypothetical individual had more difficulty in terms of being able to sit for extended periods and stand for extended periods. Would there be any kind of sit-stand option available at the light work level which would help this individual stay gainfully employed?
>
>[VE]: Yes, sir. I believe that all three of those positions [cashier, assembly work, router] would provide for a sit-stand option, but not at those numbers. I would reduce the numbers by at least 50 percent. . .

(R. at 53-54.) The ALJ clarified during the hearing that the VE understood that the positions he noted would be available for a sit/stand option. (R. at 55.) The ALJ also explained that he did not ask the VE about sedentary occupations because if Plaintiff were limited to sedentary work or less, he would "grid out," or no work would be available. (R. at 55.)

Upon examination by Plaintiff's counsel at the hearing before the ALJ, the VE again confirmed that the occupations he noted would provide for a sit/stand option, though not necessarily at Plaintiff's will. (R. at 55-62.) Plaintiff's counsel repeatedly asked the VE why the occupations would not be sedentary, and each time the VE confirmed that they were in fact "light" duty. (R. at 55-62.) When asked what would be the sedentary aspect of the router position, the VE responded, "[w]ell, it's a light duty job. <u>It's not a sedentary job.</u> It's a light duty job, and typically I've seen it done more at a bench type setting." (R. at 56, emphasis added.) The VE clarified that he used the term "light" as it is defined by the regulations and the Dictionary of Occupational Titles ("DOT"). (R. at 56-57.) Plaintiff's counsel again tried to categorize the router position as sedentary, stating that if Plaintiff had to sit for more than two hours a day, the position would be sedentary.[12] (R. at 57.) The VE corrected Plaintiff's counsel,

---

[12] It appears from the record of the hearing testimony that Plaintiff's counsel misunderstood that a position that allows a person to sit for more than two hours in an eight-hour day is not necessarily a sedentary occupation. (R. at 55-62.) The VE clarified for counsel numerous times that

11

explaining that the position is not necessarily sedentary because of a sitting aspect, as there are still pushing and pulling requirements that exceed the weight limits, as well as "all kinds of parameters that would keep it from being a sedentary" position. (R. at 57-58.) The VE conceded that the sit/stand option would not necessarily be at Plaintiff's convenience, but the ALJ did not ask the VE to assume a sit/stand option at Plaintiff's convenience, nor did he ultimately find that Plaintiff needed the option at his convenience. (R. at 13-17, 53-54, 59.) The VE also clarified that the assembly work position would be a light duty position, not a sedentary position, for the same reasons noted earlier. (R. at 59-60.)

While seemingly ignoring the VE's opinions regarding the implications of a sit/stand option on Plaintiff's potential occupational base, Plaintiff argues that the ALJ's questioning of the VE "sheds no light" on what the ALJ meant regarding the "vague" sit/stand option. (Pl.'s Mem. at 11-13.) Plaintiff is essentially asking the Court to employ a "special clarity" criterion, which as the Fourth Circuit noted in <u>Walls</u>, would improperly require the agency to support its decisions by more than the substantial evidence burden. 296 F.3d at 291. It appears from Plaintiff's argument here that there remains a misunderstanding that the occupations noted by the VE are light duty occupations, and not sedentary occupations. Plaintiff contends that if he "believes that performing the job in a seated position for most of the day is more comfortable, the job becomes 'sedentary'." (Pl.'s Mem. at 11-12.) Such a conclusion is incorrect, and contrary to the VE's testimony. (R. at 55-62.) Plaintiff also appears to argue that the VE admitted in his hearing testimony that the occupations noted earlier were sedentary positions,

---

just because an occupation can be performed in primarily a seated position does not change its description from light duty to sedentary duty, as there are numerous criterion differentiating light work from sedentary work. (R. at 56-58, 60.)

and not light positions, but such an assertion is incorrect.[13] Furthermore, though Plaintiff argues that SSR 83-12 notes that there are "relatively few light jobs which are performed primarily in a seated position," his conclusion that the "more appropriate 'framework' of a Grid Rule to use would have been the Sedentary Grid Rule" ignores the remainder of SSR 83-12, which acknowledges that there are occupations which allow a sit/stand option and directs the agency to consult with a VE to assess the impact of that option on the occupational base. (Pl.'s Mem. at 12, SSR 83-12, see also Walls, 296 F.3d at 291.)

The ALJ consulted a VE as required by SSR 83-12, and properly relied on the VE's testimony regarding the implications of a sit/stand option on the potential occupational base. The VE testified that at least three "light" occupations accounted for a such an option, and the ALJ was permitted to accept his opinions. (R. at 49-62.) Accordingly, the ALJ's decision is supported by substantial evidence and application of the correct legal standards, and should therefore be affirmed.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 7) be DENIED; that Defendant's motion for summary judgment (docket no. 11) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

---

[13] Plaintiff's brief states: "Ultimately, the VE admitted that these jobs could be performed from the seated position (Tr. 55-60) and would have to be considered, more appropriately as requiring a Sedentary RFC to do the job - not a Light RFC." (Pl.'s Mem. at 12.) The Court notes that the VE stated that these jobs could indeed be performed in a seated position. (R. at 55-60.) However, in any event, the apparent assertion that the VE conceded that these positions would be sedentary, and not light, is incorrect, as the VE testified repeatedly that such positions were still light duty occupations. (R. at 55-62.)

13

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                              /s/
                                                            DENNIS W. DOHNAL
                                                            UNITED STATES MAGISTRATE JUDGE

Date: October 27, 2010
Richmond, Virginia